UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIANA MASSICOTTE,

    Plaintiff,

v.                                            Case No. 8:20-cv-2923-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

    This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge (ALJ) committed reversible error by finding two sources equally persuasive even though "there were significant differences in the opinions which the [ALJ] did not address or discuss." (doc. 20 at 6). After considering the parties' arguments and the administrative record (docs. 16, 20), I find the Commissioner's decision is supported by substantial evidence.

    A. *Background*

    Plaintiff Briana Massicotte was born on November 22, 1990, and was 27 years old when she applied for SSI benefits. (R. 31) Plaintiff has a high school education, is single, and lives with her parents at their home. (R. 52) Plaintiff alleges a disability onset date of November 10, 2016, due to multiple sclerosis, bulging discs in her back, and Hashimoto thyroiditis. (R. 81)

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff testified that she stopped working on her onset date because she was diagnosed with multiple sclerosis and was "having a lot of cognitive issues. Like I walk in a room and my mind will just completely blank. I couldn't tell you my name, I couldn't tell you my age, I couldn't tell you nothing about myself." (R. 53) She continued: "I'll just stand in a room staring at the space for five minutes or more until my thought process, you know, comes back." (*Id.*) She experiences daily tremors and testified that "[t]he use of my bladder is completely gone. I just go on myself. Like, I've lost complete control of my bladder." (R. 54) She spends her days crafting with her Cricut machine, making cards, boxes, and posters. (R. 55) She also has two puppies she cares for.

After an administrative hearing, the ALJ found Plaintiff suffers from the severe impairments of multiple sclerosis, obesity, hypertension, Hashimoto thyroiditis, lumbar disorder, and cervical bulges. (R.24) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the RFC perform light work with limitations:

> [The claimant] can lift 20 pounds occasionally and 10 lift and carry pounds frequently. She can stand and/or walk up to 6 hours, and sit up to 6 hours in an 8-hour workday, with normal and customary breaks. The claimant cannot climb tall ladders, ropes, or scaffolds, but can occasionally climb lesser ladders, ramps, and stairs. She can occasionally stop, kneel, crouch and crawl, and frequently balance. She must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and avoid even moderate exposure to industrial hazards and unprotected heights.

(R. 26) After consulting the VE, the ALJ found that, with this RFC, Plaintiff (who has no past relevant work) could work as a cleaner/housekeeper, office helper, and survey worker. (R. 32) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (R. 1-3) Her administrative remedies exhausted, Plaintiff sued.

*A. Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled

to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

  B. Discussion

    1. *ALJ's weighing of medical evidence*

Plaintiff argues that the ALJ did not comply with applicable regulations in considering the findings of state agency consultative physician Allison Trowbridge, M.D. and consultative examiner Brian Higdon, M.D. According to Plaintiff, the ALJ erred in finding *both* opinions persuasive, because they contradict each other in key respects: Dr. Trowbridge found Plaintiff could occasionally stoop, crawl, and balance, while Dr. Higdon opined Plaintiff could never perform these actions. Had the ALJ adopted Dr. Higdon's opinion, Plaintiff contends, Plaintiff could not perform the jobs the ALJ identified as within her RFC. The Commissioner

4

responds that the ALJ need not defer to any medical opinion or prior administrative medical finding in formulating Plaintiff's RFC and that the regulations do not require the ALJ to adopt every part of a doctor's findings, because the RFC determination is an issue reserved to the ALJ. I side with the Commissioner on this record.

Before March 27, 2017, the method for weighing medical opinions under the Social Security Act was found in the regulations at 20 C.F.R. § 416.927(c). The opinions of examining physicians were generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 416.927(c)(1-5). The regulations required an ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 416.927(c).

Here, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on December 18, 2017. (*See* R. 22) As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

5

specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).  The first two factors, however, are the most important:  "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 3 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").[2]

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

The new regulations also change the standards an ALJ applies when articulating his or her assessment of medical source opinions.  First, as mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  Second, the ALJ

---

[2] ALJs are not required to explain how they considered factors 3 through 5 (20 C.F.R. § 416.920c(b)(2)) unless the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 416.920c(b)(3).

no longer needs to "give good reasons" for the weight he or she assigns to treating source opinions. *Compare* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). In *Harner, v. Social Security Administration, Commissioner*, No. 21-12148 (11th Cir. June 27, 2022), the Eleventh Circuit recently affirmed that these new regulations eliminate the treating physician rule.

Here, the ALJ properly evaluated Drs. Trowbridge and Higdon's opinions under the new regulations. At the reconsideration level, Dr. Trowbridge reviewed the medical evidence in June 2018, and opined Plaintiff could perform tasks that correspond to light work: she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk for up to six hours in an eight-hour workday and sit for up to six hours in an eight-hour workday; and she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (R. 104-06)

At the agency's request, Dr. Higdon examined Plaintiff in November 2019, two months before Plaintiff's hearing and three months before the ALJ's written decision. (R. 715-28) Dr. Higdon reported that Plaintiff had full strength and no decreased sensation in her upper and lower extremities; normal reflexes; normal range of motion within all categories; and negative straight leg raise tests bilaterally. (R. 717-19) She was able to lift, carry, and handle light objects – Plaintiff told Dr. Higdon she can lift and carry up to 20 pounds occasionally and 10 pounds frequently. (R. 716) Dr. Higdon observed that Plaintiff could

7

perform fine motor skills (like buttoning a button and manipulating a coin), squat and rise with ease, rise from a sitting position without assistance, and get on and off the exam table without help. (R. 718)  And despite Plaintiff's multiple sclerosis diagnosis, Dr. Higdon noted she was not on any medication normally prescribed to treat MS. (*Id.*)  After examining Plaintiff, Dr. Higdon opined (consistent with Plaintiff's statement and Dr. Trowbridge's finding) that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently. (R. 723)  He also checked boxes indicating that Plaintiff can sit for a total of seven hours, stand for a total of four hours, and walk for two hours in an eight-hour workday. (R. 724) Dr. Higdon opined that Plaintiff can occasionally climb ramps and/or stairs, kneel, and crouch, but (contrary to Dr. Trowbridge's findings) could never balance, stoop, or crawl. (R. 726)

The ALJ considered both Drs. Trowbridge and Higdon's opinion in formulating Plaintiff's RFC for light work with limitations.  Regarding Dr. Trowbridge's opinion, the ALJ stated:

> The opinions of Allison Trowbridge, M.D., the State agency physical consultant, are persuasive (4A/14).  Dr. Trowbridge opined that the claimant was able to work at the light residual functional capacity despite her physical impairments and symptoms.  These opinions are supported by the claimant's admission that she was able to sit for 30 minutes, stand for 1 hour, walk for 1 hour, and repetitively lift 10 pounds and 20 pounds occasionally.

(R. 31)  Citing Dr. Higson's opinion at Exhibit 18F, the ALJ continued:  "The consultative examinations lend support and revealed normal range of motion and normal strength, intact

8

fine motor skills, negative straight leg raises, steady and unassisted gait, and ability to carry light objects (9F/2; 18F)."[3] (*Id.*)  The ALJ discussed Dr. Higdon's opinions specifically:

> I find the opinion of Dr. Brian Higdon, the consultative examiner, persuasive (18F).  He opined that the claimant was able to lift and carry 10 pounds frequently and 20 pounds occasionally (18F/9).  This opinion was based on the claimant's admission of her lifting, walking, and carrying abilities; and, Dr. Higdon's own examination of the claimant.  Moreover other physical examinations in the file also showed similar findings, with Babinski signs, full range of motion throughout the musculoskeletal system, 3+ greater deep tendon reflexes throughout, a normal gait, and no sign of tremors (22F; 9F).

(*Id.*)

Plaintiff cites no case law supporting the notion that when an ALJ finds an opinion persuasive, he must incorporate every portion of that opinion into the claimant's RFC.  Other than citing 20 C.F.R. § 416.920c (regarding how the agency considers medical evidence), Plaintiff cites no legal authority at all in the argument portion of her brief (Doc. 20 at 5-7).  Unspooling Plaintiff's argument reveals its fallacy:  Plaintiff suggests that the ALJ must choose which opinion (Dr. Higdon or Dr. Trowbridge's) to assign more weight, articulate this in his opinion, and incorporate every portion of the physician's opinion into Plaintiff's RFC formulation.  This argument misconstrues the revised regulations, which state that the Commissioner "will not defer *or give any specific evidentiary weight*, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] own medial sources."  20 C.F.R. § 416.920c(a) (emphasis added).  It follows that the ALJ need not adopt every part of an opinion he or she finds persuasive.  *See Misla v.*

---

[3] Exhibit 9, to which the ALJ also refers, is the February 2018 consultative examination completed by Bryan Thomas, M.D. (R. 588)  Dr. Thomas made many of the same findings as Dr. Higdon, although he did not opine as to Plaintiff's exertional limitations. (R. 585-91)

*Comm'r of Soc. Sec.*, No. 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021).

In the end, substantial evidence supports the ALJ's decision. Plaintiff offers no specific evidence undermining the ALJ's RFC determination. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (the claimant "bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim."). It bears repeating that a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor."). On this record, Plaintiff's argument fails.

    C. *Conclusion*

It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on July 11, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

12